UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

JONATHAN W. BUCKINGHAM,            )
                                   )
            Plaintiff,             )
                                   )
    v.                             )   Civil Action No. 09-2286 (PLF)
                                   )
RAY MABUS, Secretary of the Navy,[1])
                                   )
            Defendant.             )
                                   )

OPINION

Plaintiff Jonathan W. Buckingham seeks judicial review of a decision by the defendant, the Secretary of the Navy, and the Board for Correction of Naval Records, an administrative subdivision of the Navy. The defendant has filed a motion to dismiss Mr. Buckingham's complaint or, in the alternative, for summary judgment. Mr. Buckingham has opposed that motion and filed a cross-motion for summary judgment. Upon consideration of the parties' arguments, the relevant legal authorities, and the entire record in this case, the Court will deny the defendant's motion to dismiss the complaint, grant its motion for summary judgment, and deny the plaintiff's cross-motion for summary judgment.

I. BACKGROUND

Plaintiff Jonathan W. Buckingham received a commission in the United States Navy in May 2006 upon his completion of the Navy Reserve Officers Training Corps

---

[1] The complaint named Donald C. Winter, former Secretary of the Navy, as the defendant in this case. The Court now substitutes Ray Mabus, the current Secretary, as defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

("NROTC") Scholarship Program. Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("DMSJ") at 2; Plaintiff's Cross-Motion for Summary Judgment ("PMSJ") at 1. In December 2006, a security officer at a naval retail store located in San Diego, California, observed Mr. Buckingham place two DVDs and a Navy souvenir in his pockets and leave the store without paying for them. Administrative Record ("AR") at 34. Mr. Buckingham was placed under "military apprehension" and released into the custody of a superior officer. Id. at 36.

In February 2007 Mr. Buckingham was notified that his commanding officer was "considering imposing nonjudicial punishment" on him in connection with the 2006 shoplifting incident. See AR at 42. At the hearing subsequently held by his commanding officer, Mr. Buckingham admitted that he had intentionally taken items from the Naval Exchange store without paying for them in December 2006. Id. at 45. His commanding office elected to discipline him by issuing a nonjudicial punishment ("NJP") in the form of a "punitive letter of reprimand" on February 16, 2007. Id. That letter, which would remain in Mr. Buckingham's official naval record unless set aside on appeal, stated that Mr. Buckingham committed "misconduct" by "willfully stealing merchandise," and that Mr. Buckingham's actions "reflect[ed] adversely on the leadership, judgment and discipline required of [him] as an officer." Id. Mr. Buckingham did not appeal the issuance of the letter of reprimand. Id. at 51.

Despite his issuance of a letter of reprimand, Mr. Buckingham's commanding officer urged his superiors not to punish Mr. Buckingham further, contending that "barring this NJP, [Mr. Buckingham's] performance has been superb. . . . [H]e is one of the most conscientious and hard-working junior officers in my wardroom." AR at 51-52. The

commanding officer offered a "strong . . . personal recommendation that ENS Buckingham not be detached for cause and that he not be required to show cause for retention in the Naval service." Id. at 52. The Commander of the Navy Personnel Command nevertheless approved an order initiating the administrative separation of Mr. Buckingham from the Navy on June 11, 2007. Id. at 54. A letter dated June 13, 2007, advised Mr. Buckingham that "[a]dministrative action to separate you as a probationary officer has been initiated . . . based on" misconduct constituting a "[f]ailure to demonstrate acceptable qualities of leadership required of an officer" and "failure to conform to prescribed standards of military deportment." Id. at 58. The letter further informed Mr. Buckingham that his discharge would be characterized as "General (Under Honorable Conditions)," and that the Navy might move to recoup the value of educational assistance provided to Mr. Buckingham through the NROTC program. Id. at 58-59.

A request by Mr. Buckingham for a further hearing on his case was denied. See AR at 61, 67. On July 27, 2007, the Commander of the Navy Personnel Command ordered that Mr. Buckingham be separated from the Navy with a General Discharge (under Honorable Conditions), and that he be required to reimburse the Navy $82,841.49, an amount equal to the value of the educational assistance provided to him, prorated to account for time spent in naval service. Id. at 6.

On April 15, 2008, Mr. Buckingham, represented by counsel, filed an application with the Board for Correction of Naval Records ("the Board"). See AR at 10, 11-17. He asked that he be reinstated to his former position in the Navy or, in the alternative, that his discharge be "upgrade[d]" from General Under Honorable Conditions to Honorable, and his educational debt to the Navy cancelled. Id. at 11. He argued that he was entitled to the requested relief "for two

reasons." Id. at 14. First, he asserted that the punitive nature of "the administrative separation greatly outweigh[ed] the incident" that provoked the punishment. Id. In support of that argument, Mr. Buckingham argued that the letter of reprimand he had received was an appropriate and sufficient punishment for his minor misconduct. See id. The non-judicial punishment he had received was "designed as a rehabilitative tool" and had succeeded in rehabilitating Mr. Buckingham; he had "continu[ed] to receive high marks and the esteem of his chain of command in the time following the incident." Id. at 14-15. Furthermore, the letter of reprimand was no slap on the wrist, as it "would in all likelihood cut ENS Buckingham's Naval career short due to an eventual [ineligibility] for promotion." Id. at 15. Separating the ensign and demanding the recoupment of educational costs after the issuance of the reprimand inflicted severe punishment "on top of the punishment he had already received" for a "one time lapse in judgment." Id.

Second, Mr. Buckingham argued that he should be reinstated, or that his discharge should be considered Honorable, because the loss of Ensign Buckingham, "a valuable asset," was "a detrimental action for the United States Navy." AR at 14, 16. This was so because Mr. Buckingham's "conduct and performance," aside from the December 2006 incident, were "exemplary," as reflected by his record and letters of support written by his superior officers, who described him as "'well above average for his peer group,'" as an "'excellent resource,'" and as a "'model junior officer.'" Id. at 16 (citations omitted). His record, it was argued, constituted "overwhelming evidence that the intended purpose of the NJP Letter of Reprimand ha[d] been served," because Mr. Buckingham's "conduct and performance since the incident ha[d] been exemplary." Id.

4

On January 16, 2009, the Board issued a decision rejecting Mr. Buckingham's application.  See AR at 1-2.  After summarizing the factual background of Mr. Buckingham's case, the Board stated that it had

> carefully weighed all potential mitigation, such as your youth, regret for your misconduct, favorable recommendations, and performance of your duties.  The Board also considered the letters of recommendation that you submitted with your application.  Nevertheless, due to the seriousness of your misconduct, the Board concluded that these factors were not sufficient to warrant your reinstatement in the Navy, recharacterization of your discharge, or waiving recoupment of your NROTC education costs.

Id. at 2.  Mr. Buckingham now seeks judicial review of the Board's decision and requests a finding that the Board's decision "was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise contrary to law."  Complaint at 6.  He asks that the Court "[s]et aside the decision of the" Board, "compel the Defendant" to reinstate him or to waive his education debt, and "upgrade his discharge from General Under Honorable to Honorable."  Id. ¶ B.

## II.  LEGAL STANDARDS AND JUSTICIABILITY

*A.  Justiciability and the Administrative Procedure Act*

The Secretary of a military department, under procedures established by that Secretary and approved by the Secretary of Defense, and "acting through boards of civilians of the executive part of that military department," "may correct any military record" of that department when he or she "considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  The Navy regulations implementing the statute provide for the establishment of a Board for Correction of Naval Records, which is to consist of civilian officers

5

or employees of the Department of the Navy. 32 C.F.R. § 723.2(a). The Board may deny relief without a hearing "if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice." Id. § 723.3(e)(2). When the Board denies a petition without holding a hearing, it must render its decision in writing and "include a brief statement of the grounds for denial." Id. § 723.3(e)(3). Although in some circumstances a Board decision does not become final until it is reviewed by the Secretary of the Navy, the Secretary generally does not review decisions of the Board that deny relief without a hearing. See id. § 723.7(a).[2]

The defendant in this case urges the Court to hold that Mr. Buckingham's "demand for reinstatement, waiver of indebtedness, and [re]characterization of his discharge" is nonjusticiable because courts generally avoid "interfer[ing] with the military's exercise of discretion in internal military matters." DMSJ at 10. But while some forms of relief requested by Mr. Buckingham may be well outside the scope of the Court's remedial power, see Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989), the substance of his legal claim is merely a request for review of the Board's decision pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. See Compl. ¶¶ 52-58. It is clear that such a claim is justiciable. See Piersall v. Winter, 435 F.3d at 324 (calling it a "well-settled rule that the decisions of boards for correction of military records are subject to review under the APA"). The Court therefore denies the defendant's motion to dismiss the plaintiff's complaint as

---

[2] Since the Secretary ultimately has discretion to alter or approve any Board decision, the final agency action subject to judicial review is technically the Secretary's refusal to disturb the decision of the Board. For simplicity's sake, the Court refers to the decision under review as the Board's. See Piersall v. Winter, 435 F.3d 319, 320 n.* (D.C. Cir. 2006) (announcing that the court of appeals would employ this practice).

nonjusticiable and will resolve the parties' dispute by deciding their cross-motions for summary judgment.

While the Board's decisions are reviewable under the APA, they are also entitled to a great deal of deference. The Court must uphold the Board's decision to deny a petitioner's request to correct his naval records unless the petitioner can establish that the decision is either "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or not supported by substantial evidence in the record. 5 U.S.C. § 706(2)(A), (E); see Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997); Kreis v. Sec'y of the Air Force, 866 F.2d at 1514; Mudd v. Caldera, 26 F. Supp. 2d 113, 120 (D.D.C. 1998). Since the statute authorizing the Secretary to correct military records gives the Secretary — and his delegated agent, the Board — a great deal of discretion, the arbitrary and capricious standard is even more difficult to meet in a case like this than it is in other cases brought under the APA. See Kreis v. Sec'y of the Air Force, 866 F.2d at 396 ("It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act 'when he considers it necessary to correct an error or remove an injustice' than it is if he is required to act whenever a court determines that certain objective conditions are met." (citations omitted)). Nevertheless, despite the considerable deference accorded to the military in this area, the plaintiff can prevail on his claim that the Board's decision-making process violated the APA if he can establish that (1) the Board did not consider or respond to an argument made by the plaintiff that is not "frivolous on its face," or (2) the basis of the Board's decision is not supported by evidence anywhere in the record. See Frizelle v. Slater, 111 F.3d at 176-78; Mudd v. Caldera, 26 F. Supp. 2d at 120.

*B. Summary Judgment Standard*

Summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In a case involving review of a final agency action under the Administrative Procedure Act, 5 U.S.C. § 706, however, the Court's role is limited to reviewing the administrative record; the standard set forth in Rule 56(c) does not apply. See Catholic Health Initiatives v. Sebelius, 658 F. Supp. 2d 113, 117 (D.D.C. 2009), *rev'd on other grounds*, 617 F.3d 490 (D.C. Cir. 2010); Cottage Health System v. Sebelius, 631 F. Supp. 2d 80, 89-90 (D.D.C. 2009). "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" Catholic Health Initiatives v. Sebelius, 658 F. Supp. 2d at 117 (quoting Cottage Health System v. Sebelius, 631 F. Supp. 2d at 90). Summary judgment serves as "the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review," but the normal summary judgment standard does not apply. See id.; see also Fuller v. Winter, 538 F. Supp. 2d 179, 185 (D.D.C. 2008); Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995).

III. DISCUSSION

Mr. Buckingham claims that the Board's decision was arbitrary and capricious because the Board "was presented with but failed to respond to Mr. Buckingham's principal

8

argument that an NJP is, by regulation, rehabilitative by nature and should not have led to Mr.
Buckingham's separation." PMSJ at 9. He is incorrect.

While an agency must consider and address all non-frivolous arguments presented to it, Mudd v. Caldera, 36 F. Supp. 2d at 120, the agency's discussion of those arguments "[need not] be a model of analytic precision to survive a challenge. A reviewing court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Frizelle v. Slater, 111 F.3d at 176 (internal quotation marks and citation omitted). Related to that principle is the rather obvious proposition that an agency generally is not required by the APA to address arguments that have not been asserted by the parties to a proceeding. See, e.g., Coburn v. McHugh, Civil Action No. 09-1266, 2010 WL 3833737, at *4 (D.D.C. Sept. 29, 2010) (rejecting APA claim based on arguments never presented to or addressed by the agency). Furthermore, judicial consideration of such arguments is barred; it is a "hard and fast rule of administrative law" that "issues not raised before an agency are waived and will not be considered by a court on review." Nuclear Energy Inst., Inc. v. EPA, 373 F.3d 1251, 1297 (D.C. Cir. 2004).

By these standards, the Court finds that those arguments that were presented by Mr. Buckingham to the Board were adequately addressed by the Board's decision. All other arguments made by the plaintiff before this Court were never raised in administrative proceedings and so have been waived. At the administrative level, Mr. Buckingham argued that he should receive the relief he requested because "the administrative separation greatly outweighs the incident and [because] the loss of ENS Buckingham is a detrimental action for the United States Navy." AR at 14. Mr. Buckingham's receipt of an NJP was discussed in the memorandum submitted by Mr. Buckingham to the Board in connection with the idea that "the

9

incident" that resulted in Mr. Buckingham's separation was a minor transgression properly addressed by a minor punishment; he argued, through counsel:

> A standard Captain's Mast decided that a NJP and letter of reprimand was the fitting response to this momentary indiscretion. NJP is authorized by Article 15 of the Uniform Code of Military Justice. According to the Manual for Courts-Martial, NJP "provides commanders with an essential and prompt means of maintaining good order and discipline and also promotes positive behavior changes in servicemembers [*sic*] without the stigma of a court-martial conviction." Hence, NJP is clearly designed as a rehabilitative tool. In fact, it accomplished exactly that in this case as evidenced by ENS Buckingham's continuing to receive high marks and the esteem of his chain of command in the time following the incident.

Id. at 14-15 (citation omitted). The intended purpose of this discussion of the function of an NJP was clearly to provide support for Mr. Buckingham's overaching contention that separation was inequitable ("outweigh[ed] the incident"); the gist of the discussion is that (1) the punishment chosen by Mr. Buckingham's commanding officer was minor, implying that the offense itself was minor, and (2) if an NJP was a "rehabilitative" punishment, and Mr. Buckingham had in fact been rehabilitated, then perhaps separation was unnecessary.

Although the Board did not specifically mention Mr. Buckingham's contention that an NJP is a "rehabilitative tool" in its decision, it very clearly did address the overarching argument of which that reference to the NJP was a part — the contention that separation was an excessive punishment and was inequitable. Stating that it had "carefully weighed all potential mitigation" of Mr. Buckingham's misconduct, "such as [his] youth, regret for [his] misconduct, favorable recommendations, and performance of [his] duties," the Board nevertheless concluded that the "seriousness of [Mr. Buckingham's] misconduct" meant that separation and recoupment were neither erroneous nor unjust. AR at 2. This statement demonstrates that the Board, as Mr.

10

Buckingham requested, weighed the equities of his situation and was unpersuaded that the factors — such as the allegedly "rehabilitative" nature of the NJP — supposedly arrayed in Mr. Buckingham's favor outweighed the significance of his misconduct. The Board thus adequately addressed the substance of the argument to which the NJP was relevant, even though it did not in the process enumerate every point made by Mr. Buckingham in support of that argument.

In the proceedings before this Court, Mr. Buckingham, through the same counsel who represented him before the Board, for the first time has suggested that the issuance of the NJP precluded any subsequent punishment under applicable regulations. See PMSJ at 13-16. This argument was never presented to the Board. Mr. Buckingham contends that it was, suggesting that his "argument that '[the] punishment does not fit the crime' [was], in effect, an argument that [his] command abused its discretion or otherwise violated the law when it initiated separation proceedings against [him] after imposing an NJP for the same act of misconduct." Id. at 13 (citation omitted). Thus, according to Mr. Buckingham — after divining that, when Mr. Buckingham claimed his separation was unfair, he really meant it was illegal — the Board should have "determine[d] whether . . . the NJP imposed on Mr. Buckingham for one incident and Mr. Buckingham's subsequent remedial behavior precluded Mr. Buckingham's administrative separation under applicable regulations." Id. That assertion lacks merit. Mr. Buckingham nowhere suggested in the memorandum submitted to the Board on his behalf by legal counsel that his separation was illegal or in any way impermissible under "applicable regulations." Indeed, the regulations that Mr. Buckingham now insists precluded his separation were never cited by him during the proceedings before the Board. Compare id. at 15 (citing Secretary of the Navy Instruction ("SECNAVINST") 1.b (presumably referring to SECNAVINST 1920.6C, Encl.

3, ¶ 1(b))), with AR at 11-17 (making no reference to any SECNAVINST regulation). Because Mr. Buckingham's argument that the issuance of an NJP legally precluded his subsequent separation was never raised at the administrative level, it will not be entertained by this Court. See Nuclear Energy Inst., Inc. v. EPA, 373 F.3d at 1297. And of course, since the argument was never presented to the Board, the Board did not act arbitrarily or capriciously in failing to consider it.[3]

IV. CONCLUSION

Because Mr. Buckingham has failed to demonstrate that the Board's decision was arbitrary, capricious, or otherwise unlawful, the Court will deny his motion for summary judgment and grant the cross-motion of the defendant. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: March 28, 2011

---

[3] Mr. Buckingham's argument that separation cannot follow issuance of an NJP under applicable regulations has no merit. The plaintiff cites no regulations that support this argument. The only regulations cited by Mr. Buckingham — which, again, were never mentioned in proceedings before the Board — have nothing to do with issuance of an NJP, but instead describe various types of misconduct that may warrant separation for cause. See PMSJ at 14-15. Mr. Buckingham claims that the "incident" leading to his separation does not fall into any of the categories of misconduct meriting separation that are listed in the regulations. See id. This argument, too, was never presented to the Board. It also lacks merit, since Mr. Buckingham's misconduct clearly falls within one of the categories of behavior that may lead to discharge. See SECNAVINST, Encl. 3, ¶ 1(b)(1) (discharge may result from "any . . . misconduct which would require specific intent for conviction").